IN THE UNITED STATES DISTRICT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **STATE FARM FIRE & CASUALTY CO.**<br>**ONE STATE FARM PLAZA**<br>**BLOOMINGTON, IL  61710**<br>            **Plaintiff,**<br><br>       v.<br><br>**MIDEA AMERICA CORP.**<br>**300 KIMBALL DRIVE (SUITE 100)**<br>**PARSIPPANY, NJ  07054**<br>            **Defendant.** | **CIVIL CASE NO.:** |

## COMPLAINT

Plaintiff, State Farm Fire & Casualty Company ("Plaintiff"), by and through undersigned counsel, hereby demands judgment against Defendant, Midea America Corporation ("Defendant"), complaining against it as follows:

## PARTIES

1. Plaintiff is an Illinois corporation with its principal place of business at the above-captioned address.

2. At all relevant times, Plaintiff was authorized to provide in Pennsylvania the insurance described herein.

3. At all relevant times, Plaintiff provided – via an in-force policy – homeowner insurance to Allison J. Edwards ("subrogor") in connection with her residential property at 4 Tradition Lane in Downingtown, Pennsylvania ("subject property").

4. As a result of claims made on said policy, Plaintiff became subrogated to certain recovery rights and interests of subrogor, i.e. for monies paid per the policy, including the claims asserted in this action.

5. Upon information and belief, Defendant is a New Jersey corporation with its principal place of business at the above-captioned address

6. Upon further information and belief, Defendant was at all relevant times engaged in the business of designing, manufacturing, assembling, inspecting, testing, selling, distributing, and/or marketing dehumidifiers, including those such as the Keystone-brand Model No. KSTAD70B dehumidifier at issue in this action.

## JURISDICTION AND VENUE

7. Jurisdiction is based on 28 U.S.C. §1332(a)(1) as this action involves a controversy between citizens of different states; moreover, the amount in controversy exceeds the jurisdictional threshold of this Court (exclusive of interest and costs).

8. Venue is proper in this district based on 28 U.S.C. §1391(b) in that the events giving rise to this claim occurred in this district.

## STATEMENT OF FACTS

8. Plaintiff incorporates by reference the preceding paragraphs as though they were repeated here.

9. Prior to May 1, 2022, Defendant designed, manufactured, assembled, tested, inspected, marketed, distributed and/or otherwise placed into the stream of commerce dehumidifiers such as the dehumidifier at issue in this action; said dehumidifiers were intended for use by domestic consumers for the ordinary purposes associated with dehumidifiers.

10. Prior to May 1, 2022, a dehumidifier designed, manufactured, assembled, tested, inspected, marketed, distributed and/or otherwise placed into the stream of commerce by Defendant was in use at the subject property ("the product").

11. Prior to May 1, 2022, subrogor operated the product in the normal, ordinary and intended manner, as well as for its normal, ordinary and intended purposes.

12. On or about May 1, 2022, a fire occurred at the subject property due to a malfunction of the product.

13. The fire resulted in substantial damage to subrogor's property, as well as other consequential and incidental damages (including clean-up costs, repair, and other associated expenses).

14. At all relevant times (i.e. prior to or during its use,) the product was not modified, changed, altered or abused by subrogor or anyone else.

15. At all relevant times, Defendant knew and intended that its dehumidifiers – including the product – would be used by members of the public, and knew of the specific uses, purposes and requirements to which said dehumidifiers would be put.

16. Defendant designed, manufactured, assembled, tested, inspected, marketed, distributed and/or otherwise placed into the stream of commerce the product, including its component parts, in a dangerous and defective condition, which catastrophically failed due to a defect therein and/or malfunction thereof.

17. As a result of the above-described fire and consequent damages, subrogor made claims on the aforementioned policy; Plaintiff paid these claims consistent therewith in an amount in excess of $150,000.00.

18. Plaintiff thereby became subrogated to certain recovery rights and interests of subrogor as to such policy monies paid, including all claims pursued via this action.

**COUNT I – NEGLIGENCE**

19. Plaintiff incorporates by reference the preceding paragraphs as though they were

repeated here.

20. Defendant owed subrogor a duty of reasonable care in regard to the design, manufacture, assembly, inspection, testing, distribution, sale, marketing, etc., of the product.

21. The damages suffered by subrogor as described above were the direct and proximate result of negligence and/or other unlawful conduct of Defendant – by and through its employees, agents, technicians, contractors, suppliers and/or servants – more specifically described as follows:

   a. failing to exercise reasonable care in …
      i. failing to design, manufacture, assemble, inspect, test, sell, distribute, and/or market a properly functioning product;
      ii. failing to properly design, manufacture, assemble, inspect, test, sell, distribute, and/or market the product; and/or
      iii. failing to determine that the product was not in compliance with applicable standards so as to operate safely.

22. As a direct and proximate result of this negligence, and such negligence having resulted in the damages subrogor sustained, Defendant became liable to subrogor.

23. By operation of the insurance payments Plaintiff made to subrogor for said damages, Plaintiff became subrogated to recover on the damages suffered by subrogor for which it paid; thus, Defendant is ultimately liable to Plaintiff for the damages described herein.

**WHEREFORE**, Plaintiff respectfully requests judgment against Defendant in an amount in excess of $150,000.00, plus costs incident to this suit, delay damages, and attorney fees, as well as for such other relief as this Honorable Court shall deem appropriate under the circumstances.

## COUNT II – STRICT LIABILITY

24. Plaintiff incorporates by reference the preceding paragraphs as though they were repeated here.

25. Defendant is engaged, and at all relevant times was engaged, in the business of designing, manufacturing, assembling, inspecting, testing, selling, distributing, marketing, and/or otherwise placing into the stream of commerce (*inter alia*) dehumidifiers such as the product, and specifically did design, manufacture, assemble, inspect, test, sell, distribute, market, and/or otherwise place into the stream of commerce the product.

26. In so doing, Defendant designed, manufactured, assembled, inspected, tested, sold, distributed, marketed, and/or otherwise placed into the stream of commerce the product in a defective condition, unreasonably dangerous to subrogor and her property.

27. Defendant knew or should have known that the product would, and did, reach subrogor without substantial change in the condition in which originally selected and sold.

28. The aforementioned defects consisted of:

    a. design defects;
    b. manufacturing defects;
    c. component defects;
    d. use-instructions and/or warnings defects; and/or
    e. a failure to warn of the design, manufacturing, and/or component defects, and/or properly provided warning and/or safe-use instructions.

29. For these reasons, Defendant is strictly liable to subrogor under Section 402A of the Restatement (Second) of Torts, as well as Pennsylvania's applicable statutory and case law.

30. By operation of the insurance payments Plaintiff made to subrogor for said damages, Plaintiff became subrogated to recover on the damages suffered by subrogor for which it paid; thus, Defendant is ultimately liable to Plaintiff for the damages described herein.

**WHEREFORE**, Plaintiff respectfully requests judgment against Defendant in an amount in excess of $150,000.00, plus costs incident to this suit, delay damages, and attorney fees, as well as for such other relief as this Honorable Court shall deem appropriate under the circumstances.

### COUNT III – BREACH OF WARRANTIES

31. Plaintiff incorporates by reference the preceding paragraphs as though they were repeated here.

32. At the time of selling the product, Defendant knew or had reason to know of the particular purposes for which it would be used, and knew that its skill and judgment were being relied upon to furnish a suitable product.

33. Thus, given the foregoing, Defendant breached implied warranties of fitness for a particular purpose as set out in the Uniform Commercial Code ("UCC") and in 13 Pa. C.S.A. § 2-315 in that the product was not fit for the particular use for which it was intended.

34. In addition, Defendant breached implied warranties of merchantability as set out in the UCC and 13 Pa. C.S.A. § 2-314 (c) in that the product was not fit for the uses for which it was intended.

35. Defendant also breached any and all express warranties made or relating to the product that became part of the basis of the bargain for sale of the product in violation of the UCC and 13 Pa. C.S.A. § 2-313.

36. Furthermore, Defendant breached the express and implied terms set out in the

warranties enjoyed by subrogor at the time of coming to use the product, and/or any time subsequent thereto.

37. Subrogor's above-described damages occurred as a direct and proximate result of Defendant's breach of its implied warranties of fitness for a particular purpose and merchantability as set out in 13 Pa. C.S.A. § 2-315 and § 2-314 (c), and as a result of its breach of expressed warrantees in violation of 13 Pa. C.S.A. § 2-313, as well as the express and implied warranties set out in the warranties subrogor enjoyed upon coming to use the product, and/or any time subsequent thereto.

38. By operation of the insurance payments Plaintiff made to subrogor for said damages, Plaintiff became subrogated to recover on the damages suffered by subrogor for which it paid; thus, Defendant is ultimately liable to Plaintiff for the damages described herein.

**WHEREFORE**, Plaintiff respectfully requests judgment against Defendant in an amount in excess of $150,000.00, plus costs incident to this suit, delay damages, and attorney fees, as well as for such other relief as this Honorable Court shall deem appropriate under the circumstances.

                        **de LUCA LEVINE LLC**

BY:    */s/ Daniel J. de Luca*
         DANIEL J. de LUCA,
         Attorneys for Plaintiff
         PA ATTY I.D. NO.: 74727
         Three Valley Squire, Suite 220
         Blue Bell, PA 19422
         Ph: 215-383-0081
         Fx: 215-383-0082
         ddeluca@delucalevine.com

**Dated:** April 4, 2023